Daniels, J.
The action was brought to recover penalties for the violation of the excise laws, by the sale of intoxicating liquors in quantities less than five gallons, without a license. It was commenced by Ansel S. Mevins, as overseer, whose term of office expired during its pendency. Charles Moore was elected to succeed him, but he afterwards resigned, and Horton, at a special town meeting, was elected as his successor ; and by an order of the court, entered upon a stipulation of the attorneys of the parties, the action was continued in the name of Horton.
It was objected upon the trial that neither Mevins nor *126 Moore had taken the oath of office, as that was required to be done by the amendment to the constitution of the state, and that this action, therefore, had not been lawfully commenced by Kevins. He did, however, take and file the oath which had previously been required by statute, and gave the usual bond, and then entered upon and discharged the duties of the office. He held it, therefore, under the authority of a lawful election, and by at least a colorable compliance with the requirements of the law, and that was all which could be required to entitle him to represent the interests of the public as overseer of the poor of the town. Although the oath taken and filed by him was insufficient, and neither in substance nor in form all that was required by section 1 of article 12 of the constitution, it was still an oath of office, as far as it proceeded, and partially, in that manner, complying with this requirement. It was defective for omitting the second paragraph prescribed by this article of the constitution ; but nothing in the constitution, or in the statutes of the state divested the overseer of his office because of this omission. It was still a defective oath of office, and under its authority, and that of his election, the overseer entered upon the discharge of his duties. In this respect the case very materially differs from that of the People agt. Nostrand (46 N. Y., 375), for there the commissioner had absolutely vacated his office by accepting the office of sheriff. He had been, by the terms of the statute, effectually removed from his office of commissioner, while in this case the overseer had encountered no such disability whatsoever. As he was in the office by virtue of the election, and this colorable compliance with the official requirements made upon him, he was at least a de facto officer, whose acts were valid so far as they concerned the public or the rights of third persons having an interest in the discharge of his duties (People agt. Hopson, 1 Denio, 575, 579).
Hpon this subject it has been held that an officer who has been elected and has the certificate of the proper authority to ' that effect, becomes qualified to hold the office, although his *127 title to it will be defeasible for not having taken the oath prescribed by law (People agt. Crissey, 91 N. Y., 616, 635.) And that such an officer as the overseer of the poor was, after filing his defective oath, may exercise the functions of his office, is further sustained by Foote agt. Stiles (57 N. Y., 399); Cronin agt. Gundy (16 Hun, 520); and Matter of Kendall (85 N. Y., 302).
The application of these authorities to this case is denied, for the reason, as it has been urged, that the overseer should be required to establish a strict legal compliance with the provisions of the constitution relative to his oath before he could be permitted to commence or maintain an action for the recovery of the penalties claimed in this action. But in no view which can be taken of this case is it one where he is endeavoring to recover the money for himself, for by chapter 109 of the Laws of 1878, where a recovery shall be had, it is made the duty of the overseer to pay over the money to the treasury of the county for the support of the poor of the town or city in which the penalty has been incurred. The money, therefore, would in no event belong to the overseer, and the case, for that reason, would not be within anything which was said in the opinion in People agt. Nostrand (supra).
The right of Horton to continue the action was further resisted because Moore was not deemed to have legally surrendered his office as overseer, and for the further reason that Horton himself was not legally elected as his successor. But Moore did present his resignation and it was accepted, and he ceased to discharge the duties of the office. After that a notice of a special meeting was given, and the fact that it could not be produced upon the trial did not divest it of its legal effect in this respect, for it was shown that a meeting of the town did take place, and that Horton was elected as the successor of Moore, and after that qualified and entered upon the discharge of the duties of the office, and as to his right to continue the suit as the overseer of the poor of the town no doubt, therefore, is now entertained.
*128 It has been urged that the overseer himself should not have been named in the title of the action, but that it should have been brought in the name of the office of the overseer of the poor of the town. Chapter 109 of the Laws of 1878 may possibly be susceptible of this construction; but even if it should be held to be so, it would not affect the disposition of this case, forasmuch as that1 was stated in the title of the action after giving the name of the overseer himself. If his name, as overseer, was not necessary or proper, the action would still be good as an action in the name of the office of the overseer of the poor of the town, for that was the form given by the title in addition to his own name as overseer.
It is urged that the spiritilous liquors which the evidence tended to prove were obtained from the defendant, were not sold at the place mentioned in the complaint; but even if they were not, this was simply a variance which did not appear to have misled the defendant to his prejudice, and for that reason cannot now entitle him to a new trial of the issues in the action.
The evidence which was given tended to show a purchase of the intoxicating liquors from him, and the fact that the druggist to whose store the defendant went with the bottles did not sell whisky uncompounded with other substances, tended very directly to confirm the position taken by the plaintiff upon this part of the case. The evidence was sufficient, although the defendant himself testified to the contrary, to justify the jury in reaching the conclusion that the sales were made by the defendant as they were alleged to have been made in the complaint. A case was made out to a reasonable degree of certainty, and as neither of the exceptions can be sustained, the motion for a new trial must be denied, with the usual costs.